UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
RODNEY MARSHALL,

                        Plaintiff,

             -against-

CITY OF NEW YORK; Police Officer IBALLYS STARLING, Shield No. 13534; Sergeant MATTHEW SEPE, Shield No. 2896; Lieutenant FRANK DIPRETA,

                       Defendants.
------------------------------------------------------------------x

**SECOND AMENDED COMPLAINT**

Jury Trial Demanded

15 CV 6096 (PKC) (JO)

## NATURE OF THE ACTION

1.    This is an action to recover money damages and injunctive relief arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and Section 14-151 of the Administrative Code of the City of New York.

3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5. This Court has supplemental jurisdiction over the claims brought pursuant to the Administrative Code of the City of New York pursuant to 28 U.S.C. § 1367(a).

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action.

## PARTIES

7. Plaintiff Rodney Marshall is a resident of Queens County in the City and State of New York.

8. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

9. Defendant Police Officer Iballys Starling, Shield No. 13534 ("Starling"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Starling is sued in her individual and official capacities.

10. Defendant Sergeant Matthew Sepe, Shield No. 2896 ("Sepe"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Sepe is sued in his individual and official capacities.

11. Defendant Lieutenant Frank Dipreta ("Dipreta"), at all times relevant herein, was an officer, employee and agent of the NYPD. Defendant Dipreta is sued in his individual and official capacities.

12. At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

*The NYPD's "Operation Losing Proposition" Practice at the 106th Precinct*

13. Pursuant to a written policy, the NYPD authorizes its precinct-level commanders to conduct undercover prostitution stings known as "Losing Proposition" operations ("OLP").

14. In an OLP sting, an officer posing as a prostitute and wearing a hidden microphone attempts to arrest patrons for violating Penal Law § 230.04, Patronizing a Prostitute in the Fourth Degree, a Class A Misdemeanor punishable by up to a year in jail and a $1,000 fine.

15. In OLP training, which supervisors executing the stings are required to

attend, the NYPD addresses the legal issues surrounding the operation, including the potential for those arrested to assert the defense of entrapment and the importance of preserving *Rosario* material.

16. The OLP policy strictly requires that the undercover's microphone transmissions be recorded during every operation and made available to prosecutors.

17. At the 106th Precinct, OLP operations are conducted under the auspices of the Special Operations Lieutenant, defendant Frank Dipreta.

18. With respect to the execution of OLP stings at the 106th Precinct, Lieutenant Dipreta is a final municipal policymaker.

19. Lieutenant Dipreta has overseen between ten and fifteen OLP stings at the 106th Precinct, including the OLP sting that resulted in plaintiff's arrest.

20. Despite the requirement of the NYPD's written OLP policy, none of the OLP operations supervised by Lieutenant Dipreta have been recorded, including the OLP sting that resulted in plaintiff's arrest.

21. Lieutenant Dipreta is aware that the OLP stings he conducts are not being recorded and knowingly conducts them in that manner.

22. Lieutenant Dipreta has taken no steps to bring his precinct's OLP practices into compliance with the NYPD's written OLP policy.

*The False Arrest of Rodney Marshall*

23. At approximately 3:30 p.m. on April 11, 2014, Mr. Marshall was lawfully present in the vicinity of 127th Street and Foch Boulevard in Queens, New York.

24. Mr. Marshall had parked his car at the Post Office and was standing at his trunk preparing a parcel for shipment when a woman approached him.

25. Unbeknownst to Mr. Marshall, the woman was defendant Starling in disguise.

26. Starling was the undercover officer in a 106th Precinct OLP sting organized and supervised by defendants Dipreta and Sepe.

27. Defendant Starling, who was wearing a hidden microphone that was not recording in contravention of the NYPD's written OLP policy, struck up a conversation with Mr. Marshall.

28. Defendant Starling steered the conversation toward an offer by her to perform sex acts for money.

29. Mr. Marshall declined and defendant Starling walked away.

30. Defendants Sepe and Dipreta heard the conversation between Mr. Marshall and defendant Starling in real time through a speaker in their police car and knew that Mr. Marshall had not committed a crime.

31. As Mr. Marshall prepared to close his trunk and walk into the Post Office, police vehicles arrived and several officers approached Mr. Marshall.

32. The officers were part of the OLP apprehension team responding to a signal given by defendant Starling and verified by defendants Sepe and Dipreta.

33. Lacking even reasonable suspicion to detain him, let alone arguable probable cause to arrest, officers handcuffed and arrested Mr. Marshall.

34. Mr. Marshall was put into a police van full of arrestees and taken to a police precinct.

35. After spending over five hours in the precinct, Mr. Marshall was issued a desk appearance ticket and released.

36. Defendant Starling prepared a false supporting deposition claiming that Mr. Marshall had solicited prostitution and containing alleged inculpatory statements, and caused it to be forwarded to employees of the Queens County District Attorney's Office.

37. On or about January 9, 2015, after being compelled to appear in court on several occasions and spending $5,000 to retain private counsel, all charges against Mr. Marshall were adjourned in contemplation of dismissal with one-day sealing.

38. Mr. Marshall, an African American man, is a member of a protected class under the New York City Human Rights Law.

39. Upon information and belief, defendants took law enforcement action with regard to Mr. Marshall based solely on his actual and/or perceived color and/or race.

40. Plaintiff suffered damage as a result of defendants' actions. Plaintiff was deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, anxiety, embarrassment, humiliation, damage to his reputation, pecuniary loss, and loss of employment/promotional opportunities.

## FIRST CLAIM
### Unlawful Stop and Search

41. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

42. Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched plaintiff without reasonable suspicion.

43. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## SECOND CLAIM
### False Arrest

44. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

45.     Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

46.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### Denial of Constitutional Right to Fair Trial

47.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

48.     Defendant Starling created false evidence against plaintiff.

49.     Defendant Starling caused that false evidence to be conveyed to prosecutors in the Queens County District Attorney's office.

50.     In creating false evidence against plaintiff, and in forwarding false information to prosecutors, defendant Starling violated plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

51.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM
### Failure to Intervene

52. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

53. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

54. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

55. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### Bias-Based Profiling

56. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

57. In initiating law enforcement action against Mr. Marshall based on his actual and/or perceived race and/or color rather than Mr. Marshall's behavior or other information linking him to suspected unlawful activity the defendant officers engaged

in bias-based profiling in violation of Section 14-151(c)(i) and (ii) of the Administrative Code of the City of New York.

58. Accordingly, plaintiff is entitled to injunctive and declaratory relief, along with reasonable attorney's fees and costs.

## SIXTH CLAIM
### *Monell*

59. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

60. Lieutenant Dipreta possesses final authority to establish municipal policy with respect to the conduct of OLP operations at the 106th Precinct.

61. Given that OLP operations are designed to illicit inculpatory statements as the sole evidence of guilt against a suspect, it violates due process to knowingly conduct such a sting without functioning recording equipment.

62. The City, through defendant Dipreta, is aware that the 106th Precinct's OLP practices do not include the constitutionally-mandated recording safeguard, but has failed to change its policy.

63. The OLP policy as applied at the 106th Precinct is likely to result in future violations of citizens' constitutional rights.

64. The OLP policy as applied at the 106th Precinct was a moving force behind plaintiff's injuries.

65. Accordingly, plaintiff is entitled to damages and injunctive and declaratory relief, along with reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) An order enjoining defendants from conducting future OLP stings without functioning recording equipment;

(d) A declaration that plaintiff has been subjected to discrimination through bias-based profiling by defendants;

(e) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

-12-

(f) Such other and further relief as this Court deems just and proper.

Dated:   September 29, 2016
         New York, New York

HARVIS & FETT LLP

_____
Gabriel P. Harvis
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880
gharvis@civilrights.nyc

*Attorneys for plaintiff*
