Index No.  15 CV 6096 (PKC) (JO)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RODNEY MARSHALL,

                              Plaintiff,

               -against-

CITY OF NEW YORK, et al.,

                              Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE***

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Shira Siskind*
*Tel:  (212) 356-2414*
*Matter No. 2015-047840*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT…………………………………………………………………..1

ARGUMENT

      POINT I

      PLAINTIFF'S REQUEST FOR AN ADVERSE INFERENCE SHOULD BE DENIED……………………………………………………………………………...2

           A. Defendants did not spoliate any evidence for which an adverse inference would be appropriate…………………………………………….2

      POINT II

      PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF OR QUESTIONING DEFENDANT STARLING ABOUT UNRELATED ALLEGATIONS OF MISCONDUCT AND DISCIPLINE……………..............7

           A. Any Unrelated Discipline Pertaining to Defendant Starling's Failure to Properly Maintain Her Memo Books Fails to Satisfy Any Exception to Rule 404(b)……………………………………………………………………..8

           B. The Proffered Evidence Fails to Qualify As "Pattern Evidence" Pursuant to Rule 404(b) And Should be Precluded…………………………………………………………………………..8

           C. Even If Plaintiff Could Satisfy One of the Exceptions to Rule 404(b), The Evidence At Issue Should Be Precluded on Rule 403 Grounds……………………………………………………………………..11

CONCLUSION……………………………………………………………………………..13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

RODNEY MARSHALL,

                                                  Plaintiff,

          -against-

CITY OF NEW YORK, et al.,

                                                  Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTIONS *IN LIMINE* FILED UNDER SEAL**

**15 CV 6096 (PKC) (JO)**

------------------------------------------------------------------------ x

## **PRELIMINARY STATEMENT**

Plaintiff's spoliation argument rests on the false premise that there actually was evidence that could have been destroyed. Here, the evidence that plaintiff argues was destroyed − a recording of the interaction between Officer Starling and plaintiff − never existed. Since defendants did not destroy or alter any evidence, the Court must deny plaintiff's request for an adverse inference to the jury at trial as defendants did not commit any sanctionable conduct that would warrant such an inference. Further, plaintiff's motion regarding admission of Officer Starling's disciplinary history should be denied because plaintiff has failed to show how evidence of Officer Starling's alleged prior bad acts fall within any exception to FED. R. CIV. P. 404(b) or would be admissible under FED. R. CIV. P. 608(b)(1) as these incidents do have any bearing on Officer Starling's propensity for truthfulness.

1

## POINT I

### PLAINTIFF'S REQUEST FOR AN ADVERSE INFERENCE SHOULD BE DENIED

**A. Defendants Did Not Spoliate Any Evidence for Which an Adverse Inference Would be Appropriate.**

Plaintiff argues that defendants should be sanctioned in the form of an adverse inference for the spoliation of the kel recording. As the kel recording of the incident does not exist and has never existed, plaintiff's motion should be denied.

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve it for another's use in litigation. In re GM LLC Ignition Switch Litig. (Fleck v. General Motors LLC), No. 14-cv-8176 (JMF), 2015 U.S. Dist. LEXIS 172723, at *118 (S.D.N.Y. Dec. 29, 2015). A party seeking severe sanctions for spoliation of evidence must establish that (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed "with a culpable state of mind"; and (3) the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could infer that it would support that claim or defense. Id. at *118-19; see also Twitty v. Salius, 2012 U.S. App. LEXIS 1115, at *3 (2d Cir. Jan. 19, 2012). Before awarding severe sanctions, such as dismissal, preclusion or an adverse inference, the court must also consider whether the innocent party has suffered prejudice as a result of the loss of relevant evidence. Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC, 685 F.Supp.2d 456, 467 (S.D.N.Y. 2010). "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." Zubulake v. UBS Warburg LLC ("Zubulake V"), 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (citation omitted). As an initial

matter, and as previously mentioned *supra*, as there was never a recording of the incident, the defendants could not and did not destroy or alter any evidence. On this basis alone, the Court should deny plaintiff's motion for an adverse inference premised on a spoliation charge simply because no evidence was destroyed.

Plaintiff's attempt to argue otherwise – that "it is undisputed that the evidence at issue existed when the conversation between defendant Starling and plaintiff was transmitted by the microphone Starling was wearing and broadcast into the police vehicle of defendants Dipreta and Sepe" – is unavailing. (Plaintiff's Memorandum of Law in Support of his Motions *In Limine* ("Pl.'s Motion"), p. 8. Plaintiff appears to argue that since statements were made between plaintiff and Officer Starling, that constituted evidence that should have been recorded, and, because the defendants did not record these statements, defendants effectively "destroyed" this evidence. However, making this argument is akin to saying that when the police do not record interactions with the public they have destroyed evidence because any conversation is technically evidence that could be recorded and preserved. This argument is absurd, and the Court should not give it any credence. In People v. Durant, 26 N.Y.3d 341, 350 (N.Y. Ct. App. 2015), a case where there was a request for an adverse inference because an interrogation was not recorded, the Court found that where the police did not create "an electronic recording . . . in the first instance, much less destroy it, they do not know the contents of the potential recording or whether those contents will be material at trial, and there is no deliberate destruction of potentially material evidence that would warrant the deterrent of an adverse inference instruction." People v. Durant, 26 N.Y.3d 341, 350 (N.Y. Ct. App. 2015). So too in this case, where no recording ever existed, there is no way to know the contents of the non-existent

recording, and there can be no deliberate destruction of it necessitating an adverse inference instruction. As an "adverse inference instruction is an extreme sanction [that] should not be imposed lightly," (Treppel v. Biovail Corp., 249 F.R.D. 111, 120 (S.D.N.Y. 2008)), the Court, in its discretion, should not grant plaintiff's request for an adverse inference.

Additionally, here, an adverse inference instruction would be inappropriate because, while the recording, had it actually existed, could have potentially "supported [p]laintiff's claims . . . it is equally likely that the [recording] would not have supported [p]laintiff's claims." Stern v. Shammas, 12-CV-5210 (NGG) (RER), 2015 U.S. Dist. LEXIS 97879, at *36-37 (E.D.N.Y. July 27, 2015) (citing to McGinnity v. Metro-N. Commuter R.R., 183 F.R.D. 58, 63 (D. Conn. 1998) in which that court did not give an adverse inference instruction in a situation where the parties on both sides were "equally prejudiced by the absence of the tape recording" and discovery was "conducted by all parties in the absence of the tape recording."). Similarly, in this case, because no recording ever existed, it was equally likely that, had the recording ever been created, it would have supported defendants' defenses, and, by not having the benefit of a recording, both defendants as well as plaintiff were prejudiced in the same way.

Further, on a policy level, were the Court to issue an adverse inference instruction in this case, that could have the potential to require adverse inferences not only in situations involving losing proposition cases in which the interaction between the police and civilian was not recorded, but also in cases where "the police have the power to memorialize certain events in a more reliable way and fail to do so." People v. Durant, 26 N.Y.3d at 353 (N.Y. Ct. App. 2015). In other words, it would potentially necessitate an adverse inference in

4

every situation where the police do not "memorialize the existence of some fact via some method other than the memory of the witnesses." Id. In situations where the courts believe that there is a systemic issue with the NYPD failing to record interactions between civilians and the police, the remedy would not be an adverse inference, as plaintiff suggests, but rather, an administrative one.

Moreover, an adverse inference about a failure to record the incident in question, would certainly serve to confuse the jury, and it would be incredibly prejudicial to defendants because the jury would likely believe that the alleged failure to record the incident with plaintiff somehow means that plaintiff's constitutional rights were violated. FED. R. EVID. 403. Such an inference coupled with the Court's allowance of portions of the NYPD operation losing proposition training material (which discusses the NYPD's requirement that losing proposition operations be recorded), which the Court has already ruled it will allow into evidence, assuming plaintiff lays the proper foundation, would doubly prejudice defendants for the reasons mentioned above. Moreover, such prejudice could not be mitigated by a curative instruction informing the jury that a violation of the patrol guide does not equate to a violation of the constitution. Indeed, such a curative instruction would be wholly confusing to the jury because on the one hand, there would be an adverse inference regarding the defendants purported failure to record and preserve the kel recording of the incident, and on the other hand, the Court would advise the jury that the failure to record does not mean that plaintiff's constitutional rights were violated in the instant case. These two competing instructions will surely leave the jury with unanswerable questions regarding which instruction they should follow, and will either result in them disregarding both instructions, or, choosing to credit one instruction over the other, and

likely lead them to conclude that the fact that there is no recording of the incident means that a constitutional violation occurred.

Plaintiff also spends a substantial amount of time in his motion papers laying out the elements necessary to find spoliation and then trying to apply the facts of this case to the elements to show that he has met the burden of showing that spoliation occurred in this case. Because, as argued *supra*, there was no evidence that could have been destroyed in this case, there is no need to go into the separate elements of a spoliation claim, and defendants will not waste the Court's time in so doing. Plaintiff further relies on Rule 37 of the Federal Rules of Civil Procedure, stating that a court may sanction a party who "fails to obey an order to provide or permit discovery, or who without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(2)," and that an appropriate sanction in this case would be an adverse inference. Pl.'s Motion., pp. 14, 15, 16. Again, this argument completely misses the point that in this case, there was no evidence that defendants failed to disclose to plaintiff. Thus, because defendants did not destroy any evidence or fail to disclose any evidence, defendants did not engage in sanctionable conduct that would warrant an adverse inference as plaintiff suggests. Accordingly, for the foregoing reasons, plaintiff's motion requesting an adverse inference should be denied.

## POINT II

### PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF OR QUESTIONING DEFENDANT STARLING ABOUT UNRELATED ALLEGATIONS OF MISCONDUCT AND DISCIPLINE

Defendants submit that plaintiff's request to introduce evidence of so-called prior bad acts fails to satisfy any exception under FED. R. EVID. 404(b). Defendants further submit that even if plaintiff were able to satisfy that high burden, the evidence at issue should be excluded under Rule 403 on the grounds that it is not relevant, would be unduly prejudicial and would represent a significant waste of time. Moreover, the prior bad acts that plaintiff seeks to admit are not even similar to the alleged bad act in this case. Specifically, the prior bad acts that plaintiff seeks to question Officer Starling about deal with failing to disclose information. However, the allegation in the complaint is that Officer Starling "prepared a false supporting deposition" stating that plaintiff committed certain acts that he denies committing. SAC, ¶ 36. This is very different from allegations or discipline relating to failing to make a report or failing to disclose certain information.[1]

Further, Rule 404(b) provides that evidence of a "crime, wrong, or other act is not admissible to prove a person's character to show that on a particular occasion the person acted in accordance with the character. FED. R. EVID. 404(b). Plaintiff's request, while veiled as one

---

[1] To the extent that plaintiff is claiming that the prior allegations and discipline are similar to the instant case because of the absence of any recording, these allegations do not make any sense against Officer Starling as she had no control over any recording device while she was speaking with plaintiff on the date of the incident. Additionally, though plaintiff argues that he has a claim against Officer Starling for a failure to disclose exculpatory evidence, no such allegation exists in the complaint. Pl.'s Motion, p. 20. See generally SAC.

made pursuant to an exception under Rule 404(b), is focused solely on introducing evidence of prior bad acts to show that Officer Starling acted in conformity therewith.

> **A. Any Unrelated Discipline Pertaining To Defendant Starling's Failure To Properly Maintain Her Memo Books Fails To Satisfy Any Exception To Rule 404(b).**

Plaintiff mentions in passing that Officer Starling "failed to make required memo book entries," which resulted in a "substantiated finding" (Pl.'s Motion, p. 19), however, does not articulate how this failure falls into one of the Rule 404(b) exceptions, or really, how it is relevant to this action at all other than attempting to demonstrate a purported example of Officer Starling's failure to disclose information. Plaintiff also fails to provide any additional information regarding the specific nature of this substantiated allegation and how it is similar to the false arrest claim in the instant action. Accordingly, the Court should deny plaintiff's motion with respect to any questioning or cross-examination of Officer Starling about this substantiated allegation.

> **B. The Proffered Evidence Fails To Qualify As "Pattern Evidence" Pursuant To Rule 404(b) And Should Be Precluded.**

Plaintiff also argues that the prior bad acts he relies on in his motion qualify as pattern evidence, or that it establishes a modus operandi under Rule 404(b) and thus should be admitted. See Pl.'s Motion, p. 20. However, the law in this Circuit is clear that "[t]o merit admission under this theory, the extrinsic acts must share 'unusual characteristics' with the act charged or represent a 'unique scheme.'" Berkovich v. Hicks, 922 F.2d 1018, 1022-23 (2d Cir. 1991). Id. at 1022-23 (citing United States v. Benedetto, 571 F.2d 1246, 1249 (2d Cir. 1978)).

Here, plaintiff's moving papers are devoid of any specific analysis linking the allegations in this case with the unrelated prior bad act evidence he seeks to admit at trial.

8

Plaintiff simply states that, as in Ismail v. Cohen, 706 F. Supp. 243, 253 (S.D.N.Y.), "plaintiff in the instant case seeks to use prior substantiated disciplinary complaints to demonstrate a relevant pattern of conduct by defendant Starling in failing to make disclosures and reports." See Pl.'s Motion, p. 21. Putting aside the fact that the allegations and discipline that plaintiff seeks to introduce do not share "unusual characteristics" with the acts alleged, the Second Circuit has made clear that, for extrinsic acts to be admissible as pattern evidence, the acts by "the accused [must be] so nearly identical in method as to earmark them as the handiwork of the accused." Further, "much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. *The device used must be so unusual and distinctive as to be like a signature*." United States v. Benedetto, 571 F.2d 1246, 1249 (2d Cir. 1978) (citation omitted).

Plaintiff's allegations in this case are that Officer Starling started a conversation with plaintiff and directed the conversation to an offer of sex acts for money. When plaintiff declined Officer Starling's offer, she walked away. Lt. Dipreta and Sgt. Sepe heard this conversation and knew that plaintiff had not committed a crime. Nevertheless, plaintiff was falsely arrested. Officer Starling then "prepared a false supporting deposition" and forwarded it to the Queens County District Attorney's Office. SAC, ¶ 36. Not surprisingly, the purported pattern evidence plaintiff seeks to introduce is far from being "nearly identical" to what he claims Officer Starling did in the instant case.

The August 20, 2005 allegation related to an incident that occurred while Officer Staring was off duty at a bachelor party, in which an individual was assaulted by police officers. It was determined that Officer Starling had failed to notify her patrol supervisor and that she

failed to remain on the scene after being present at this incident/witnessing this incident. Pl.'s Exhs. 6, 7.

The July 26, 2012 incident involved an allegation that plainclothes detectives responded to a woman's home regarding a domestic violence complaint. This woman allowed the detectives to enter her apartment, and when they left, she noticed that a PlayStation was missing from her house and she thought the detectives had taken it. The next day, the complainant went to the 106th Precinct to file a complaint. According to the complainant, she spoke to Officer Starling who refused to take the complaint, and referred her to IAB. Officer Starling, when interviewed, stated that she told the complainant that she had three options. First, Starling could take the report at the precinct; second, the complainant could file a report on the internet; and third, Starling offered to give the complainant a number to make a report. The complainant asked for the number so she could make the complaint and Starling provided her with the number. After giving the complainant the number, Starling walked away and the complainant left the precinct. Because Officer Starling did not tell a supervisor that a civilian wanted to make a complaint, and because she did not contact IAB about the alleged misconduct, this allegation was substantiated against Officer Starling for failing to make/take a report and for failing to notify IAB.

Defendants submit that plaintiff is unable to provide any evidence of an "earmark" or a "signature" that shows some "distinctive similarity" between plaintiff's arrest that is the subject of this lawsuit and the prior incidents about which plaintiff seeks to cross-examine Officer Starling. See Benedetto, 571 F.2d at 1249; see also Djangmah v. Falcione, 08 Civ. 4027 (KPF), 2013 U.S. Dist. Lexis 41715, at *28 (S.D.N.Y. Mar. 25, 2013). Further, there are no

similarities between these incidents and the arrest at issue here. There is certainly no evidence to support a pattern of behavior sufficient to establish a "pattern of conduct by" Officer Starling as plaintiff suggests. Pl.'s Motion, p. 20. Accordingly, plaintiff should be precluded from introducing any unrelated allegations or findings of misconduct.[2]

>   C.   Even If Plaintiff Could Satisfy One Of The Exceptions To Rule 404(b), The Evidence At Issue Should Be Precluded On Rule 403 Grounds.

Even if plaintiff could satisfy one of the 404(b) exceptions, which he cannot, the probative value of introducing this evidence at trial would be extremely small, if non-existent, while the risk of unfair prejudice, confusion and waste of time would be enormous. Even if the Court were to issue a limiting instruction, there is a significant risk that the jury will believe plaintiff in light of these prior bad acts by assuming that what may have happened in the past also happened in the present. The introduction of this evidence would also serve to confuse the jury by focusing their attention on unrelated matters, some of which are more complicated than what happened in this case, without any clear explanation why – other than to demonstrate defendant' purported bad character.

Additionally, many of the allegations at issue, even those which were substantiated, are in dispute.[3] Thus, assuming plaintiff is able to properly introduce any of this evidence at trial – something which is by no means guaranteed – it will force the defendants to

---

[2] Defendants presume that plaintiff has abandoned any request to introduce evidence of unrelated misconduct other that which is specifically described in plaintiff's motion *in limine*. Defendants further note that plaintiff has not sought to introduce evidence of any unrelated lawsuits against the defendants and thus, he should be barred from questioning on that subject as well.

[3] As an example, Officer Starling testified at her deposition that she did not witness the assault at the bachelor party. If she did not witness the incident, she could not have failed to report something that she did not in fact observe. (Siskind Decl., Exh. A)

respond in kind. As a result, admitting any of this evidence would involve a trial within a trial on the merits of these unrelated substantiated complaints thereby unnecessarily prolonging the trial in this matter to a length that could not possibly be justified by any limited – if any - probative value the evidence may have.

Accordingly, even if any of the proffered prior bad act evidence were admissible under Rule 404(b), it should be excluded pursuant to Rule 403 on the grounds that it is unduly prejudicial, not relevant, confusing and would constitute a significant waste of time.

Finally, with respect to plaintiff's argument that the prior substantiated allegations would be admissible under Rule 608(b)(1), "to be admissible under rule 608(b), specific acts of misconduct must involve some element of deception or fraud that would tend to show the witness' propensity to lie." Munafo v. Metro. Transp. Auth., 98-CV-4572 (ERK), 00-CV-0134 (ERK), 2003 U.S. Dist. LEXIS 13495, at *76 (E.D.N.Y. Jan. 22, 2003). Here, the substantiated allegations that plaintiff seeks to cross-examine Officer Starling about do not involve "some element of deception or fraud that would tend to show [her] propensity to lie." Regarding the August 2005 allegation, no act of dishonesty was actually ever proven, and it appears that it was simply assumed that Officer Starling witnessed the incident, although there was no evidence of this fact, other than that Officer Starling was present at the party. Indeed, at her deposition, Officer Starling testified that she did not witness this incident. (Siskind Decl., Exh. A). This incident, then, surely did not involve an element of deception or fraud on Officer Starling's part.

With respect to the July 2012 incident, even by the complainant's account of the incident, Officer Starling referred her to IAB, and it can therefore not be said that Officer Starling attempted to engage in any sort of dishonest act, even assuming, *arguendo*, that she did

not tell a supervisor that she had a complainant who wanted to make a civilian complaint. Rather, to the contrary, by, at the very least, referring the complainant to IAB, Officer Starling was trying to assist the complainant in making a complaint. See Plaintiff's Exh. 8. Accordingly, plaintiff should not be permitted to cross-examine Officer Starling about the aforementioned incidents under Rule 608(b)(1) as the incidents do not have any bearing on Officer Starling's character for truthfulness.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny plaintiff's motion in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 10, 2017

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-2414

By: /s/

Shira Siskind
Assistant Corporation Counsel

cc: Gabe Harvis, Esq. (by ECF)

13

15 CV 6906 (PKC) (JO)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RODNEY MARSHALL,

                                                   Plaintiff,

-against-

CITY OF NEW YORK, et al.,

                                                   Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE***

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*New York, N.Y. 10007*

*Of Counsel:*
*Shira Siskind*
*Tel: (212) 356-2414*